UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOSEPH HARTSOCK, <br><br> Plaintiff, <br><br> v. <br><br> JOHN GALIPEAU, <br><br> Defendant. | CAUSE NO. 3:22-CV-303-JD-MGG |

OPINION AND ORDER

Joseph Hartsock, a prisoner without a lawyer, is proceeding in this case "against Warden John Galipeau in his official capacity to obtain permanent injunctive relief to protect him from attack by other inmates as required by the Eighth Amendment . . .." ECF 17 at 3. The Warden was ordered to respond to the complaint and the preliminary injunction motion which ask the court to order he not be held in GSC. *See* ECF 2. This order resolves that motion which is now fully briefed. ECF 32 and 35.

As a preliminary matter, Hartsock filed a motion asking to strike eight paragraphs from the declaration of John Hicks because he asserts they are either false or incomplete. ECF 34. Hicks' declaration was filed with the defendant's response to the preliminary injunction motion. ECF 32-5. Without regard to whether the statements are false or incomplete, striking them is not the proper way to challenge them. Instead, Hartsock should have provided his own declaration with additional or contradictory testimony. Though the motion to strike will be denied, the court accepts it as a statement by Hartsock providing additional or contradictory facts to be considered.

The following facts are from the parties' filings and are undisputed. In the motion to strike, Hartsock identifies nine times in ten months where his housing assignment was changed to protect him from other inmates. ECF 31-1 at 5. The Warden provided Hartsock's location history which corroborates the moves, though not necessarily the reason for them. ECF 32-4. In his amended complaint, Hartsock states he was moved into a new housing unit on March 2, 2022. ECF 18-1 at ¶ 62. He says he reported being in danger before he was promptly assaulted twice. *Id*. ¶ 63. His location history shows he was moved out of that unit about four and a half hours later for safety and security reasons. ECF 32-4 at 3. The location history shows he was moved three times the next day – all for safety and security reasons. *Id*. Hartsock says he was threatened by other inmates on March 3, 2022, but it is unclear in which of those three housing units this occurred. ECF 18-1 at ¶¶ 64 and 66. On March 31, 2022, Hartsock told an officer he had been threatened by still other inmates, but it is unclear when the threats were made. *Id*. at ¶ 68. On April 1, 2022, those inmates assaulted him. *Id*. at ¶ 69. On April 2, 2022, they assaulted him again. *Id*. at ¶ 70. Later that day, he was moved to a new housing unit where he was immediately threatened. *Id*. at ¶ 72. He was assaulted shortly after reporting the threats. *Id*. at ¶¶ 72-74. His location history shows he was moved the next day: April 3, 2022. ECF 32-4 at 3. The record before the court does not indicate he has been moved since. He says he was threatened in this housing unit. ECF 18-1 at ¶ 81. Despite reporting the threats, he was left there to be assaulted three times: April 6, 2022; April 10, 2022; and April 18, 2022. ECF 18-1 at ¶¶ 82, 88, and 89. When he

signed the amended complaint on April 31, 2022,[1] he declared under penalty of perjury he was still receiving threats of serious physical harm from other inmates. *Id*. at ¶ 90.

Hartsock argues he is a particularly vulnerable inmate because his vision problems make it difficult for him to see and if his eye protection is removed, he is legally blind. *Id*. at ¶ 49. An Incident Report states Hartsock is targeted because of his "sex related charges." ECF 32-1. Hartsock pleaded guilty to child molesting. *State v. Hartsock*, 02D04-0403-FA-15 (Allen Superior Court 2004). Another Incident Report documents a death threat against Hartsock. ECF 32-3 at 1. The court accepts these undisputed facts.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the first prong, "the applicant need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its

---

[1] April only has 30 days, but that is what is written on the complaint.

case." *Id*. at 763 (quotation marks omitted). Here, the uncontradicted evidence is that Hartsock was assaulted seven times in seven weeks by at least four different groups of inmates. He has been moved nine times in ten months for reasons of safety and security. John Hicks declares "Hartsock can continue to raise security issues with facility staff, who will investigate and address these issues as they arise." ECF 32-5 at 2. However, Hartsock has repeatedly reported being threatened and was repeatedly attacked before being moved. The possibility that he will be attacked in the future before he can be relocated is supported by past events. Hartsock has not demonstrated he will definitely win, but he has made a strong showing that he could obtain a permanent injunction that he be protected from attack by fellow inmates.

As to the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. "Mandatory preliminary injunctions – those requiring an affirmative act by the defendant – are ordinarily cautiously viewed and sparingly issued [because] review of a preliminary injunction is even more searching when the injunction is mandatory rather than prohibitory in nature." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). Here, though it is impossible to know what injuries Hartsock might suffer in the future, death threats have been made against him. The defendant notes he has not been seriously injured yet. ECF 32 at 5. However, even an unsuccessful attempt to kill him could easily cause irreparable harm.

4

As to the third prong, the balance of equities tips in Hartsock's favor because under the Eighth Amendment, correctional officials have a constitutional duty to protect inmates from violence. *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). The court recognizes "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Id*. All inmates face the risk of attack, but Hartsock has shown he is extremely disliked by numerous inmates. He has been repeatedly attacked. He is a particularly vulnerable inmate because he is visually impaired. He is specifically targeted because he pleaded guilty to child molesting and perhaps for other reasons as well. Separating Hartsock from every inmate who poses an unreasonable danger to him will admittedly impose a burden on the Warden. However, a narrowly tailored injunction will impose a minor burden by allowing the Warden to decide how and where to protect Hartsock from attack by inmates. This burden is less of an imposition than requiring Hartsock to face the potential of serious injury or death.

As to the fourth prong, an injunction is in the public interest because the public expects State officials to uphold their constitutional duty to protect inmates from known imminent threats of attack. Here, Hartsock has been moved repeatedly, threatened repeatedly, and attacked repeatedly. It is in the public interest this cycle not continue any longer. Therefore, the preliminary injunction motion will be granted. However, in selecting an appropriate remedy, the court recognizes

> [t]he PLRA circumscribes the scope of the court's authority to enter an injunction in the corrections context. Where prison conditions are found to violate federal rights, remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation

> of the Federal right. This section of the PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: Prison officials have broad administrative and discretionary authority over the institutions they manage.

*Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012) (quotation marks, brackets, and citations omitted).

Hartsock asks the court to order he be moved out of GSC. That is one possible remedy, but it is not the only one. The constitution requires he be protected from attack – not that he be moved out of GSC. It is not GSC that is the issue – it is Hartsock's safety. It is for the Warden to decide how and where to best to protect Hartsock. He can pick the least intrusive means for the Westville Correctional Facility to do so. The Warden could house Hartsock with other inmates who have been properly vetted to ensure they pose no danger to Hartsock and who are periodically reviewed to ensure they have not become a danger to him. The Warden could move Hartsock to a location where no other inmates have any contact with him. Though this order does not require Hartsock be housed separate from all other inmates, the Warden may believe that is the best option given how widely disliked and vulnerable Hartsock has shown himself to be as well as how frequently he seems to acquire new enemies. So long as the Warden houses Hartsock in a manner reasonably calculated to protect him from attack from other inmates, he will be in compliance with this order.

For these reasons, the court:

(1) GRANTS the preliminary injunction motion (ECF 2);

(2) ORDERS John Galipeau in his official capacity as the Warden of the Westville Correctional Facility to house Joseph Hartsock in a location where he is safe from attack by fellow inmates;

(3) DIRECTS the clerk to fax or email a copy of this order to Warden John Galipeau at the Westville Correctional Facility and to the Commissioner of the Indiana Department of Correction at the Department's Central Office;

(4) ORDERS Warden John Galipeau in his official capacity (or the Acting Warden who receives this notice) to personally provide written confirmation of receipt of this order immediately upon receipt; and

(5) ORDERS Warden John Galipeau in his official capacity (or the Acting Warden at the time) to personally provide written notification of Joseph Hartsock's location within 48 hours of receipt of this order and an explanation of why he believes he will be safe from attack in that location.

SO ORDERED on July 26, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT