UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOSEPH HARTSOCK,<br><br>Plaintiff,<br><br>v.<br><br>JOHN GALIPEAU, STROUD, WINTERS, M. MAPLES, PARRISH, ZAMBRANO, LOGOTHESIS, GREY, and SPURGEON<br><br>Defendants. | CAUSE NO. 3:22-CV-303-JD-MGG |

OPINION AND ORDER

Joseph Hartsock, a prisoner without a lawyer, began this case by filing a complaint and a motion for preliminary injunction. ECF 1 and 2. The court screened the complaint and allowed him "to proceed against the Westville Correctional Facility Warden in an official capacity to obtain permanent injunctive relief to protect him from attack by other inmates as required by the Eighth Amendment." ECF 14 at 6. All other claims were dismissed. *Id*. The Warden was ordered to respond to the motion for preliminary injunction. *Id*.

Hartsock then asked for and was granted leave to file an amended complaint. ECF 16 and 17. The amended complaint superseded the original complaint, but "given the seriousness of his injunctive relief claim, there [wa]s not time to review the other claims in the 132 paragraph complaint before ordering a response. [So t]hey w[ere] taken under advisement [to be] screened as required by 28 U.S.C. § 1915A at a later

date." ECF 17 at 2. At that time, Hartsock was only granted leave to continue to proceed on the permanent injunctive relief claim mentioned above.

After the preliminary injunction motion was fully briefed, the court found Hartsock had "been moved repeatedly, threatened repeatedly, and attacked repeatedly." ECF 41 at 5. The motion was granted. *Id*. at 6. The Warden reported Hartsock was "moved to administrative restrictive housing[,] housed in a one-person cell and will not be in direct contact with other inmates." ECF 42-1.

The court will now screen the seven count amended complaint which names twenty-two defendants. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

<u>Count One</u>

In Count One, Hartsock alleges Indiana Department of Correction (IDOC) Commissioner Robert Carter, Jr., IDOC Deputy Commissioner James Bassinger, IDOC Legal Services Director Robert Bugher, Indiana Ombudsman Bureau Director Charlene Burkett, Westville Correctional Facility (WCF) Warden John Galipeau, WCF Assistant Deputy Warden of Operations Kenneth Gann, WCF Assistant Deputy Warden for Re-entry Kenneth Watts, Major Cornett, and Captain Joseph Farley "knew of the excessive

2

violence in GSC,[1] as well as understaffing and under monitoring of GSC, combined with an over reliance on open dorm housing and . . . were deliberately indifferent to Plaintiff's health and safety as his severe photosensitivity disability increased the risk of harm to him, resulting in dangers and injuries." ECF 18-1 at ¶¶ 98-99.

Under the Eighth Amendment, correctional officials have a constitutional duty to protect inmates from violence. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). However, "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). A failure to protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). To prevail, the plaintiff must establish "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010).

> To establish deliberate indifference on the part of the defendants sued individually, Klebanowski needed to show that the officers acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to Klebanowski's health or safety, yet failed to take appropriate steps to protect him from the specific danger.

*Klebanowski v. Sheahan*, 540 F.3d 633, 639 (7th Cir. 2008).

Here, the complaint does not allege any of the high-ranking defendants named in Count One had actual knowledge of an easily preventable impending harm to

---

[1] General Services Complex is part of the Westville Correctional Facility.

3

Hartsock. Rather, it describes how the GSC was a generally dangerous place, but that is not enough to state a claim. "Prisons are dangerous places." *McGill v. Duckworth*, 944 F.2d 344, 345 (7th Cir. 1991), *abrogated on other grounds by Haley*, 86 F.3d at 640 (7th Cir. 1996).

> Some level of brutality . . . is inevitable no matter what the guards do. Worse: because violence is inevitable unless all prisoners are locked in their cells 24 hours a day and sedated (a "solution" posing constitutional problems of its own) it will always be possible to say that the guards "should have known" of the risk. Indeed they should, and do. Applied to a prison, the objective "should have known" formula of tort law approaches absolute liability, rather a long distance from the Supreme Court's standards in *Estelle* and its offspring.

*Id.* at 348.

## Count Two

In Count Two, Hartsock alleges IDOC, IDOC Commissioner Robert Carter, Jr., IDOC Deputy Commissioner James Bassinger, and IDOC Legal Services Director Robert Bugher violated the Eighth Amendment when they "designed, implemented, and approved IDOC Policy 02-01-107, Use & Operation of Protective Custody, that has led to Plaintiff previously and currently being in imminent danger of serious physical harm . . . as there is no brightline rule for removing an inmate from a dangerous situation, as it varies through human error or even malice when an inmate requests protection." ECF 18-1 at ¶ 102. He alleges the policy provides:

> An offender may request temporary assignment to a protective custody unit by contacting any staff person who shall: (1) Assist the offender in contacting the staff person designated by the Warden to review requests for protective custody. (2) Assist the offender in obtaining and completing State Form 24308, "Request for Protection." (3) The designated staff person shall review State Form 24308 to ensure adequate information is

4

> available for staff to verify the potential need for protective custody and discuss possible resolutions with the offender.

ECF 18-1 at ¶ 51. This portion of the policy describes a method for requesting protection. Hartsock explains "human error or even malice" by others implementing the policy is what placed him in danger – he does not plausibly allege how the policy is at fault other than by not providing a "brightline rule." But a brightline rule would not correct for human error or malice. Neither does he plausibly allege how there could be a brightline rule resolving the numerous fact sensitive issues involved with such requests. The complaint does not state an Eighth Amendment claim against any of the defendants named in Count Two.

### Count Three

In Count Three, Hartsock alleges IDOC, IDOC Commissioner Robert Carter, Jr., IDOC Deputy Commissioner James Bassinger, and IDOC Legal Services Director Robert Bugher violated the Eighth Amendment when they "designed, approved, and implemented IDOC Policy 00-02-301 Offender Grievance Process (IV)(C) Emergency Grievance, that has led to Plaintiff previously and currently being in imminent danger of serious physical harm. This alleged safety valve fails on its face, as it's nearly impossible for any inmate, including plaintiff, that's in a life threatening situation to submit an Emergency Grievance, and receive a response in one business day." ECF 18-1 at ¶ 105. However, "[p]rison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due

5

Process Clause . . ..". *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Allegations about deficiencies in the grievance process do not state a claim.

## Count Four

In Count Four, Hartsock alleges Officers Weaver-Masterson, Stroud, Winters, Caulley, Thomas, Maples, Parrish, Zambrano, Spurgeon, and Indiana Ombudsman Bureau Director Charlene Burkett "were deliberately indifferent to Plaintiff's health and safety when Plaintiff informed them of specific threats of serious physical violence." ECF 18-1 at ¶ 108. As noted in the discussion of Count One, correctional officials have a constitutional duty to protect inmates from violence. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). To state a claim, an inmate must allege "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). "[T]he fact that an inmate sought and was denied protective custody is not dispositive of the fact that prison officials were therefore deliberately indifferent to his safety." *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997).

> To establish deliberate indifference on the part of the defendants sued individually, Klebanowski needed to show that the officers acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to Klebanowski's health or safety, yet failed to take appropriate steps to protect him from the specific danger. Klebanowski testified during his deposition that he told officers twice on September 8 that he was afraid for his life and he wanted to be transferred off the tier. Those statements, and the officers' knowledge of the first beating, are the only pieces of evidence in the record that can assist Klebanowski in his attempt to show that the officers were aware of any risk to him. We have previously held that statements like those made by Klebanowski are insufficient to alert officers to a specific threat. *Butera*, 285 F.3d at 606 (deeming insufficient to establish deliberate indifference

6

> statements by a prisoner that he was "having problems in the block" and "needed to be removed"). In *Butera*, we deemed the inmate's statements insufficient to give notice to the officers because they did not provide the identities of those who threatened the inmate, nor state what the threats were. *Id*.
>
> The facts of this case make clear our reason for requiring more than general allegations of fear or the need to be removed. By Klebanowski's own testimony, the officers knew only that he had been involved in an altercation with three other inmates, and that he wanted a transfer because he feared for his life. He did not tell them that he had actually been threatened with future violence, nor that the attack on September 8 was inflicted by gang members because of his non-gang status. Without these additional facts to rely on, there was nothing leading the officers to believe that Klebanowski himself was not speculating regarding the threat he faced out of fear based on the first attack he suffered. This lack of specificity falls below the required notice an officer must have for liability to attach for deliberate indifference.

*Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008) (footnote omitted).

Applying these standards, the court will now review the factual allegations against each of the ten defendants named in Count Four. Hartsock alleges Officer Weaver-Masterson assigned him to a housing unit on March 2, 2022, "without previously verifying that there were no request for protection within that housing unit." ECF 18-1 at ¶ 62. He alleges she assigned him to a different housing unit on March 3, 2022, also "without first verifying that Plaintiff did not have a request for protection against inmates within that housing unit." *Id*. at ¶ 64. Finally, he alleges she did the same thing again on April 2, 2022. *Id*. at ¶ 71. None of these allegations indicate she had actual knowledge of an impending harm. At most they allege negligence – not deliberate indifference.

Hartsock alleges on March 2, 2022, when inmates "issued threats of physical violence against Plaintiff [he] relayed these specific threats to Defendant Stroud, who called Defendant Winters, relaying this information. Plaintiff was left in this specific dangerous situation and assaulted two (2) more times on that housing unit . . .." *Id.* at ¶ 63. These allegations state a claim against Officers Stroud and Winters because they are alleged to have knowledge of specific information of an impending harm easily preventable.

Hartsock alleges on March 3, 2022, Officers Thomas and Caulley heard inmates threaten him "with serious physical violence." *Id*. at ¶ 66. Hartsock does not report being attacked. Rather, he alleges Officer Caulley allowed inmates to steal his property. *Id*. at 67. Fear of an attack that does not occur does not state a claim for a violation of the Eighth Amendment. *See Doe v. Welborn*, 110 F.3d 520, 523–24 (7th Cir. 1997). The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." But, a state tort claims act that provides a method by which a person can seek reimbursement for the negligent loss or intentional depravation of property meets the requirements of the due process clause by providing due process of law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post deprivation remedy.") Indiana's tort claims act (Indiana Code § 34-13-3-1 *et seq*.) and other laws provide for state judicial review of property losses caused by government employees, and provide an adequate post deprivation remedy to redress state officials'

8

accidental or intentional deprivation of a person's property. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post deprivation remedy in the Indiana Tort Claims Act, and no more process was due.").

Hartsock alleges around 8:30 a.m. on April 2, 2022, he told Officers M. Maples and Parrish he had just been threatened with serious physical violence by several inmates. ECF 18-1 at 72. He alleges the information was relayed to Officer Zambrano, but he was not moved to a different housing unit. *Id*. He alleges he told Officer Maples (who relayed the information to Officer Zambrano) about additional threats he received during the next half hour. *Id*. at ¶ 73. At 9:00 a.m. he alleges he was seriously injured in an attack by fellow inmates. *Id*. at 74. These allegations state a claim against these three officers for failing to protect him in violation of the Eighth Amendment. Hartsock alleges he told Officers Maples and Spurgeon about the attack after it happened. *Id*. at 75. This incident does not state a claim against either because it does not allege actual knowledge of an impending harm – only knowledge of the attack after the fact.

Finally, Hartsock alleges he emailed Indiana Ombudsman Bureau Director Charlene Burkett on April 6, 2022, and again on April 7, 2022, and told her about the threats he had received. ECF 18-1 at ¶¶ 83 and 87. The job of the Ombudsman is to receive grievances, investigate as necessary, and make recommendations to appropriate personal. Policies & Procedures of the DOC Ombudsman Bureau.[2] The role of the Ombudsman is fundamentally about processing grievances – similar to a grievance

---

[2] *See* https://www.in.gov/idoc/files/2011_Policies_and_Procedures_DOC_Ombudsman.pdf.

specialist's role in the IDOC grievance process. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause . . .." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). "[P]rison officials who reject prisoners' grievances do not become liable just because they fail to ensure adequate remedies." *Est. of Miller by Chassie v. Marberry*, 847 F.3d 425, 428 (7th Cir. 2017). Hartsock alleges the Ombudsman did not properly process his grievance, but that does not state a claim.

## Count Five

Hartsock alleges on April 2, 2022, he notified Officers Logothesis, Maples, Spurgeon, Grey, Zambrano, Parrish, and Diaz that he was injured and had "blurred vision in his right eye while also seeing orange and yellow spots, and concussion-like symptoms." ECF 18-1 at ¶¶ 74, 75, 77, and 78. He alleges they denied him constitutionally adequate medical treatment. Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was

at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

Based on Hartsock's description of his injuries, he has plausibly alleged he had a serious medical need. He alleges Officers Logothesis, Maples, Spurgeon, Grey, Zambrano and Parrish did nothing to help him. ECF 18-1 at ¶¶ 75, 77, and 78. This plausibly alleges they were deliberately indifferent. However, he alleges Officer Diaz contacted the medical department when he learned of Hartsock's symptoms. *Id*. at 79. This does not plausibly allege that Officer Diaz was deliberately indifferent.

Hartsock claims Ombudsman Burkett also denied him constitutionally adequate medical treatment, but he does not allege he told her about needing medical care in either of the two emails he sent her. *See* ECF 18-1 at ¶¶ 83 and 87. Nevertheless, even if he had done so, as explained in the review of the claims in Count Four, Ombudsman Burkett did not violate his constitutional rights even if she did not properly respond to his complaints to the Ombudsman's Bureau.

Counts Six and Seven

In Count Six, Hartsock alleges IDOC violated the Americans with Disabilities Act by not housing him in a medical dorm. ECF 18-1 at ¶ 113. In Count Seven, he alleges IDOC violated the Rehabilitation Act by not housing him in a medical dorm. *Id*. at ¶ 116. These claims, against a defendant not otherwise a remaining party to this case, are unrelated to the claims that he was not protected from attack by fellow inmates. Hartsock speculates he might not have been attacked if he had been housed in a

medical dorm, but conjecture about what might have happened is not sufficient to make these two counts related to the other claims in this case. This is even more true in this case where the preliminary injunction motion was granted in part because the court found Hartsock was "widely disliked and vulnerable [as well as] how frequently he seems to acquire new enemies." ECF 41 at 7.

"[U]nrelated claims against different defendants belong in different suits," *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007), and where there are limited connections between claims the court can order severance or dismissal without prejudice, *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 864 (7th Cir. 2018). When a plaintiff files a complaint with unrelated claims, it is the usual practice of this court to allow him to decide which related claims to pursue in the instant case – as well as to decide when or if to bring the other claims in separate suits. However, this is not a usual case.

Here, Hartsock sought and has obtained a preliminary injunction. ECF 41 at 7. As such, claims related to the injunction must remain in this lawsuit. Severance is not appropriate because Hartsock is a prisoner and must pay a separate filing fee for each case he files. 28 U.S.C. § 1915(b)(1). Severance would force him into another filing fee rather than giving him the choice as to when or if to file separate lawsuit. Therefore, the court will dismiss these excess claims without prejudice. Hartsock can bring them in a separate lawsuit if he chooses.

<u>Relief</u>

In addition to monetary compensation for the claims on which Hartsock is being granted leave to proceed, he also seeks both a preliminary and permanent injunction.

ECF 18-1 at ¶¶ 122 and 123. As noted, he has already been granted a preliminary injunction. ECF 41. The permanent injunction seeks an order that he not be housed in GSC. ECF 18-1 at ¶ 123. As more fully explained in the order granting the preliminary injunction, "It is not GSC that is the issue – it is Hartsock's safety. It is for the Warden to decide how and where to best to protect Hartsock." ECF 41 at 6. Therefore, he will only be granted leave to proceed on claims to obtain a permanent injunction protecting him from attack by other inmates as required by the Eighth Amendment.

For these reasons, the court:

(1) GRANTS Joseph Hartsock leave to proceed against John Galipeau in his official capacity as the Warden of the Westville Correctional Facility to obtain permanent injunctive relief to protect him from attack by other inmates as required by the Eighth Amendment;

(2) GRANTS Joseph Hartsock leave to proceed against Officer Stroud and Officer Winters in their individual capacities for compensatory and punitive damages for failing to protect him from attack by fellow inmates on March 2, 2022, in violation of the Eighth Amendment;

(3) GRANTS Joseph Hartsock leave to proceed against Officer M. Maples, Officer Parrish, and Officer Zambrano in their individual capacities for compensatory and punitive damages for failing to protect him from attack by fellow inmates on April 2, 2022, in violation of the Eighth Amendment;

(4) GRANTS Joseph Hartsock leave to proceed against Officer Logothesis, Officer Maples, Officer Spurgeon, Officer Grey, Officer Zambrano, and Officer Parrish in their

individual capacities for compensatory and punitive damages for failing to provide him with constitutionally adequate medical treatment on April 2, 2022, in violation of the Eighth Amendment;

(5) DISMISSES WITHOUT PREJUDICE Count Six which presented an Americans with Disabilities Act claim;

(6) DISMISSES WITHOUT PREJUDICE Count Seven which presented a Rehabilitation Act claim;

(7) DISMISSES WITH PREJUDICE all other claims;

(8) DISMISSES Indiana Department of Corr., Robert Carter, Jr., James Basinger, Robert Bugher, Charlene Burkett, Kenneth Gann, Kenneth Watts, Major Cornett, Joseph Farley, Weaver-Masterson, Thomas, Caulley, and Diaz;

(9) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Warden John Galipeau, Officer Stroud, Officer Winters, Officer M. Maples, Officer Parrish, Officer Zambrano, Officer Logothesis, Officer Grey, and Officer Spurgeon at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 18-1);

(10) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(11) ORDERS, under 42 U.S.C. § 1997e(g)(2), Warden John Galipeau, Officer Stroud, Officer Winters, Officer M. Maples, Officer Parrish, Officer Zambrano, Officer

Logothesis, Officer Grey, and Officer Spurgeon to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on October 18, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT