UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOSEPH HARTSOCK,<br><br>Plaintiff,<br><br>v.<br><br>JOHN GALIPEAU, STROUD, WINTERS,<br>M. MAPLES, PARRISH, ZAMBRANO,<br>LOGOTHESIS, GREY, and SPURGEON<br><br>Defendants. | CAUSE NO. 3:22-CV-303-JD-MGG |

OPINION AND ORDER

Joseph Hartsock, a prisoner without a lawyer, filed a motion asking the court to reconsider the dismissal of his claims against Indiana Ombudsman Bureau Director Charlene Burkett because "Seventh Circuit case law does not create a brightline rule prohibiting all claims against grievance examiners or other prison officials who receive correspondence about an inmate's problem." ECF 54 at ¶ 5. The motion argues *Burks v. Raemisch*, 555 F.3d 592 (7th Cir. 2009), "suggests that a prisoner may have a viable Section 1983 claim where a grievance examiner carries out his or her duties with deliberate indifference to the risks imposed on prisoners . . . ." ECF 54 at ¶ 6 (quotation marks omitted).

In *Burks*, the district court dismissed the case at screening because it did not state a claim. On appeal, the Seventh Circuit reversed the dismissal of the claim against Shakoor, the head of the prison's medical unit; but affirmed the dismissal of the claim against Salinas, the grievance examiner. As to Shakoor, it said "[d]oing nothing *could* be

simple negligence, but it does not stretch the imagination to see that it might also amount to deliberate indifference." *Burks*, 555 F.3d at 594. For Salinas, the court found "[t]he most one can say is that Salinas did nothing, when she might have gone beyond the requirements of her job and tried to help him. A layperson's failure to tell the medical staff how to do its job cannot be called deliberate indifference; it is just a form of failing to supply a gratuitous rescue service." *Id.* at 596.

For the medical unit director, doing nothing could be deliberate indifference; but for the grievance examiner, doing nothing was not. The court explained this seeming contradiction by noting that medical staff members are responsible for providing medical care, but grievance examiners are responsible for handling grievances. "Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job." *Id*. at 595. The "contention that any public employee who knows (or should know) about a wrong must do something to fix it is just an effort to evade, by indirection, *Monell* [*v. New York City Dep't of Social Services*, 436 U.S. 658]'s rule that public employees are responsible for their own misdeeds but not for anyone else's." *Id.* at 596. Nevertheless, the court did not foreclose the possibility that a grievance examiner could be liable under some circumstances.

> One can imagine a complaint examiner doing her appointed tasks with deliberate indifference to the risks imposed on prisoners. If, for example, a complaint examiner routinely sent each grievance to the shredder without reading it, that might be a ground of liability. Or a complaint examiner who intervened to prevent the medical unit from delivering needed care might be thought liable.

*Id.* at 595 (citations omitted). In these examples, the hypothetical grievance examiner took action and was not merely doing nothing. The court in *Burks* explained the complaint in that case did not state a claim because "Salinas did not create the peril facing Burks or do anything that increased the peril, or made it harder for Burks (or anyone else) to solve the problem." *Id.* at 596.

Turning to this case, Hartsock alleges he emailed Indiana Ombudsman Bureau Director Charlene Burkett on April 6, 2022, and again on April 7, 2022, and told her about the threats he had received. ECF 18-1 at ¶¶ 83 and 87. The job of the Ombudsman is to receive grievances, investigate as necessary, and make recommendations to appropriate personal. Policies & Procedures of the DOC Ombudsman Bureau.[1] The role of the Ombudsman is fundamentally the same as the grievance examiner in *Burks*.

Hartsock's complaint alleges Director Burkett, who was located in Indianapolis, "failed to take reasonable measures to protect plaintiff from harm" when he emailed her on April 6, 2022, and again on April 7, 2022, about threats he had received from fellow inmates at the Westville Correctional Facility. ECF 18-1 at ¶ 84. Hartsock mistakenly believes it was her job to protect him from harm. It was not. As explained in *Burks*, a grievance examiner might be liable if she systematically destroys grievances, actively creates a peril, increases a peril, or makes it harder for someone else to solve the problem. A grievance examiner is not liable merely because she did not go beyond the requirements of her job to help. "Prison grievance procedures are not mandated by the

---

[1] *See* https://www.in.gov/idoc/files/2011_Policies_and_Procedures_DOC_Ombudsman.pdf.

3

First Amendment and do not by their very existence create interests protected by the Due Process Clause . . ..." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). "[P]rison officials who reject prisoners' grievances do not become liable just because they fail to ensure adequate remedies." *Est. of Miller by Chassie v. Marberry*, 847 F.3d 425, 428 (7th Cir. 2017). "Public officials do not have a free-floating obligation to put things to rights . . .." *Burks*, 555 F.3d at 595.

    For these reasons, the motion (ECF 54) is DENIED.

    SO ORDERED on November 2, 2022

    /s/JON E. DEGUILIO
    CHIEF JUDGE
    UNITED STATES DISTRICT COURT